Emily Caryl LEMMINGS Plaintiff,

v.

**FEDEX GROUND PACKAGE SYSTEM, INC.,**
Defendant.

No. 05–2516 MA/P.

United States District Court,
W.D. Tennessee,
Western Division.

May 15, 2007.

James R. Mulroy, II, Kiesewetter Wise Kaplan Prather, PLC, Memphis, TN, for The defendant.

Jason Wolfkill, Borod & Kramer, Knoxville, TN, for The plaintiff.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MAYS, District Judge.

Plaintiff Emily Caryl Lemmings ("Lemmings") brings this action for hostile work environment sexual harassment[1] in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 *et seq.*, against Defendant FedEx Ground Package System, Inc. ("FedEx"). Before the court is FedEx's motion for summary judgment, filed on August 30, 2006 ("Def.'s Mem."). On October 11, 2006, FedEx filed a motion for dismissal with prejudice and/or for judgment in its favor as a matter of law pursuant to Rules 41(b) and 56(e) of the Federal Rules of Civil Procedure on the ground that Lemmings had failed to respond timely to FedEx's motion for summary judgment. After the court granted Lemmings' motion for an extension of time to file a response and entered an order allowing excess page limit, Lemmings responded to the summary judgment motion on January 12, 2007 ("Pl.'s Mem."), and FedEx filed a reply on January 5, 2007.[2] For the following reasons, FedEx's motion for summary judgment is GRANTED.

## I. Background

The following facts are undisputed except where otherwise noted. Before Lemmings herself became a pick-up and delivery contractor for FedEx (a "contractor")

---

1. In her January 12, 2007 response, Lemmings elected not to pursue her retaliation claim and acknowledged that FedEx is entitled to dismissal on the retaliation claim under Title VII and the THRA. Therefore, the only claim fully briefed by the parties and analyzed by the court is the sexual harassment claim.

2. Lemmings transmitted her proposed response to the court and to FedEx on December 19, 2006. During the December 8, 2006 final pretrial conference, the court directed FedEx to file its reply by January 5, 2007. Therefore, FedEx filed its reply before Lemmings filed her response.

in December 2004, she drove a delivery truck for Dale McCollum ("McCollum"), a FedEx contractor. (Emily Carolyn Lemmings Dep. at 101 & 171, Apr. 11, 2006.) McCollum is the sole owner of McCollum Delivery Service. (Id. at 27.)

Pursuant to FedEx's Pick–Up and Delivery Contractor Operation Agreement, a FedEx contractor is obligated to serve specific FedEx work areas, while remaining a business owner, owning her own delivery vans, leasing and owning equipment needed for picking up and delivering packages, and maintaining and fueling her own vans. (Id. at 17, 18, 27–28, 32–36, 88–89.) A contractor may retain her own driver or drivers and other staff to assist in performing her obligations under her agreement with FedEx. (Carlos Etheredge Dec. Ex. B ¶ 2.2, Aug. 30, 2006). If she chooses to do so, a contractor has sole discretion over the compensation, supervision, and disciplining of her staff. (Lemmings Dep. 22–24, 30–32.) The Internal Revenue Service recognizes contractors engaged by FedEx pursuant to operation agreements as independent contractors for tax purposes. (Tim Wright Decl. ¶¶ 3–4, Aug. 30, 2006; James E. Scapellato Decl. Ex. A, Preliminary Expert Report, June 30, 2006.)

McCollum hired Lemmings as a driver in February 2002 and later employed her as an administrative assistant. Lemmings considered him at all times to be her "boss." (Lemmings Dep. at 57, 153, 79–81.) McCollum supervised Lemmings, who reported to him only, and McCollum determined Lemmings' work area, job responsibilities, compensation, and vacation time. (Id. at 40, 42–45, 60–61.)

Until September 10, 2004, the date of the alleged incident, Lemmings found Duane Johnson, a FedEx Ground Service Manager ("Johnson"), to be friendly, and he had never harassed her. (Lemmings Dep. at 119–20.) Johnson never had a right to supervise or direct contractors or their drivers. (Etheredge Dep. at 45.) Lemmings acknowledges that Johnson never supervised her. (Pl.'s Mem. at 15, n. 3.)

On the date of the alleged incident, which was a Friday, when Lemmings jumped onto the transfer loading dock at the FedEx Memphis Terminal (the "Terminal"), where she normally performed her duties for McCollum, Johnson walked towards Lemmings and, while facing her, wrapped his arms around her back, lifted her up, and carried her backward several steps. (Lemmings Dep. at 121, 136–45.) Johnson's hands did not touch any private part of Lemmings' body. (Id. at 142–43.) The incident occurred between 7:29:09 a.m. and 7:29:18 a.m. (Id. at 140–42.) When Johnson picked her up, Lemmings allegedly told him to put her down (Id. at 141–42), although Christopher Johns, the only witness to the incident ("Johns"), did not hear her say anything. (Christopher Johns Dep. at 71, July 28, 2006.) After Johnson put Lemmings down, he allegedly licked her neck up to her ear, telling her "Think about me later, baby." (Lemmings Dep. at 121, 143–44.) Johns did not notice the licking, and a security videotape that recorded the incident does not show the asserted licking. (Johns Dep. at 71.) The truck loading belt area where the incident occurred is about ten feet wide, about three feet of it occupied by belt machinery. (Id. at 17–19.) Lemmings states that, because she felt so embarrassed by the incident, she did not return to the loading dock until she thought no one was there. (Lemmings Dep. at 144–47.)

During the weekend of September 11–12, Lemmings did not report the incident, but she did discuss it with her boyfriend. (Lemmings Dep. at 121, 145–53.) She did not call McCollum to report the incident

immediately after it happened because he was out of town that weekend. (Id. at 148.) Lemmings states that she would typically call him only if "something serious ... [were] wrong." (Id. at 148–49.) Following the advice of her boyfriend, on Monday, September 13, Lemmings told McCollum about the incident, and he suggested she talk to Carlos Etheredge, the Terminal Senior Manager ("Etheredge"), which she did the same day. (Id. at 153–56.) Lemmings testified that she spoke to Etheredge about the incident in the morning (Id. at 154–56.), although Etheredge testified that the exchange took place in mid-afternoon. (Carlos Etheredge Dep. at 63, July 28, 2006.) Lemmings states that Etheredge told her he was not aware of FedEx's procedures for handling sexual harassment complaints (Lemmings Dep. at 161.), although Etheredge denies this. (Etheredge Dep. at 25–30.) Later the same day, Etheredge requested a copy of a security surveillance videotape of the incident. (Etheredge Dep. at 62–71.)

On September 14, Etheredge interviewed Johnson, who admitted lifting Lemmings off of her feet, although he characterized the incident as playful. On September 15, Etheredge watched the videotape separately with Lemmings and Johnson. (Etheredge Dep. at 72–83.) Later the same day, Etheredge interviewed the only witness to the incident shown on the videotape, Johns, who confirmed that the physical contact had occurred. (Id. at 77–80; Johns Dep. at 55–60.) Johns told Etheredge that he had seen Lemmings turn her head away from Johnson when he lifted her up, appearing to try to get away from him. (Johns Dep. at 59–60.) Johns did not see Johnson lick Lemmings. (Id. at 55.) After first contacting Mark Kirkpatrick, FedEx's Regional Human Resources Manager, on September 16, Etheredge reviewed the videotape with Kirkpatrick after his return to town on September 17. (Id. at 87–91.)

During the week of September 13–17, Lemmings avoided Johnson, and he did not say anything to her or look at her. (Lemmings Dep. at 165–66.) On September 16, Lemmings called the FedEx sexual harassment hotline and was allegedly told that she should call the general customer service phone line instead because the hotline was for FedEx employees only. (Compl. ¶¶ 41–42.)

On Saturday, September 18, FedEx suspended Johnson for eight days pending the outcome of the investigation into the incident Lemmings had reported. (Etheredge Dep. at 91–95, 115.) FedEx counted Johnson's suspension against his vacation days, not resulting in any loss of pay. (Id. at 98–99.) After Johnson returned from his suspension on September 30, he was issued a warning letter, his hours were changed, and he was transferred to an area of the Terminal 400 yards from Lemmings' work site, part of a different FedEx division and under a different management chain. (Id. at 97–105, 115–24.) Etheredge considered Johnson's transfer a demotion because it diminished his prospects for a future promotion. (Id. at 98–100.) FedEx terminated Johnson in March 2005 after an unrelated sexual harassment incident was reported by a female FedEx employee. (Mark Kirkpatrick Dep. at 28, July 28, 2006.)

After taking a previously planned vacation starting on September 17, Lemmings returned to work on Monday, September 27. (Lemmings Dep. at 129–30, 165–67.) During FedEx's investigation of the incident, FedEx asked Lemmings what she felt should be done to Johnson, and she told FedEx that the only solution acceptable to her would be Johnson's immediate termination. (Id. at 175, 180–81; Ether-

edge Dep. at 96.) After his transfer, Johnson's new work area at the Terminal was in a different part of the same transfer facility where Lemmings worked. There were no barriers or policies against movement of personnel between the two sites. (Etheredge Dep. at 18–19, 106–08.) Johnson's new work hours overlapped Lemmings' hours by about 30 minutes (Id. at 108–09, 115–16.), and Johnson had to walk past Lemmings' work site to travel between the employee parking lot and his new work area. (David Munoz Jr. Dep. at 40, Aug. 1, 2006.)

After Johnson's transfer, Lemmings continued to see him about once a week for about 10 or 15 minutes. (Lemmings Dep. at 110.) No words were ever exchanged between them. (Id. at 122–24.) Johnson was once within ten feet of Lemmings and she complained to Dave Munoz, a pick-up and delivery manager whom she perceived to be sympathetic, (Id. at 112–13, 122–24; Munoz Dep. at 41.), and to Mark Kirkpatrick. (Lemmings Dep. at 109.) Kirkpatrick told Lemmings that he had no authority to deal with her concerns and suggested she speak to Etheredge, who was responsible for resolving such issues. (Kirkpatrick Dep. at 6, 25–26.) After making these complaints, Lemmings saw Johnson once or twice more, as he was leaving the Terminal about 150 feet from where Lemmings parked her car. (Lemmings Dep. at 109–10; Munoz Dep. at 29–32, 40–42.) Once after the September 10 incident Johnson allegedly glared at Lemmings. (Lemmings Dep. at 124.)

On October 21, 2004, Lemmings timely filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission, which issued a notice of right to sue on April 21, 2005. (Compl.¶¶ 50–51.)

Lemmings alleges that her work for McCollum required her to spend from half an hour to three hours at the Terminal every weekday. (Lemmings Dep. at 87–88.) Lemmings continued to work for McCollum in the same capacity as before the incident until December 2004 or January 2005, when she became a contractor herself with a pick-up and delivery location at the Terminal. (Lemmings Dep. at 79–81, 171.) Lemmings was a FedEx contractor when she filed this action.

FedEx maintains a Zero Tolerance Policy that includes extensive reporting, both formal and informal, and investigative procedures for sexual harassment allegations. Employees who violate the policy are subject to discipline, up to and including termination. (Kirkpatrick Dec. ¶¶ 3–4.) Lemmings was aware of the policy and procedures. (Lemmings Dep. at 170–71.)

## II. Jurisdiction and applicable law

This court has original jurisdiction over federal claims under Title VII pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the THRA claims pursuant to 28 U.S.C. § 1367(a).

■ Because the "stated purpose and intent of the [THRA] ... is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws," *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 30 (Tenn.1996) (citing Tenn.Code Ann. § 4–21–101(a)(1) (1991)), Tennessee courts use the same framework to evaluate the THRA claims as federal courts use to evaluate Title VII actions. *See Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn.Ct.App.1984). Therefore, this court's analysis of Lemming's sexual harassment claim is identical under Title VII and the THRA, and the court will apply federal law.

## III. Summary judgment standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judg-

ment may be granted if the pleadings and evidence on file show that there is no genuine issue as to any material fact. *La-Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). The moving party can meet this burden by pointing out that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts establishing that there is a genuine issue for trial by showing that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." *Cloverdale Equip. Co. v. Simon Aerials,*

*Inc.*, 869 F.2d 934, 937 (6th Cir.1989). The district court does not have the duty to search the record for that evidence. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 110–11 (6th Cir.1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. *See id.*

## IV. Analysis

FedEx argues that it is entitled to summary judgment on Lemmings' hostile work environment sexual harassment claim because she was not its employee, but a driver retained by an independent contractor, because the incident was not sufficiently severe or pervasive, because Lemmings failed to take advantage of FedEx policies addressing sexual harassment, and because FedEx took prompt remedial action after Lemmings notified it of her allegations.

FedEx maintains that Title VII protections apply to employees only, pointing out that, at the time of the incident, Lemmings was employed directly by McCollum, a pick up and delivery contractor who worked with FedEx pursuant to an operation agreement. The Internal Revenue Service formally recognized contractors like McCollum as independent contractors for federal income tax purposes. FedEx insists that Lemmings was not an indirect employee of FedEx because FedEx was not integrated with McCollum Delivery Service, in that FedEx and McCollum did not share operations, management, personnel control, or financial control. FedEx was not a joint employer of Lemmings because FedEx did not retain control over any of the terms or conditions of Lemmings' employment and McCollum was not an agent of FedEx in establishing or implementing his employment practices, but

was independently responsible for all employment-related decisions.

FedEx argues that Lemmings cannot meet the objective test of a hostile work environment because a single ten-second incident that did not unreasonably interfere with Lemmings' work performance and was not physically threatening does not create an environment that a reasonable person would find hostile or abusive. FedEx points out that Lemmings herself did not subjectively regard her work environment as hostile because she did not call McCollum during the weekend immediately after the incident, although she admits that she would contact him when he was out of town if something serious were wrong. FedEx argues that it promptly took an appropriate remedial action once it learned of the incident. Although FedEx points out that Johnson was never Lemmings' supervisor, and at most, he was her coworker, FedEx alleges that the *Faragher v. City of Boca Raton*, 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), supervisor affirmative defense applies to preclude FedEx's liability.

Lemmings argues that Title VII imposes liability on a defendant employer for unlawful employment conditions that affect any individual when the defendant controls the individual's access to employment, even if no direct employer-employee relationship exists. Lemmings asserts that FedEx controlled Lemmings' workplace because Lemmings could not perform her duties for McCollum, her immediate employer, without entering the Terminal. Lemmings argues that she need not show that she was an employee, either direct or indirect, of FedEx.

Lemmings avers that, given the totality of the circumstances, she establishes a *prima facie* case of sexual harassment because Johnson's continued presence in her work area during the weeks after the incident, which had included forcible intimate physical contact in a small area, constituted harassment severe enough to create an objectively and subjectively hostile work environment. According to Lemmings, FedEx's remedial measures were neither prompt nor effective and did not constitute a good-faith response to the incident because Johnson continued to come into contact with Lemmings and was not demoted or forced to accept lower compensation.

## A. Employment relationship

■ Title VII protections apply only to a defendant employer's direct or indirect employees. Although the statute refers to protecting "individuals," courts have limited Title VII's protections to "employees" only. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir.2004). Federal employment discrimination statutes, including Title VII, protect employees, not independent contractors. *See, e.g., Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir.2004). The term "employee" means "an individual employed by an employer." 42 U.S.C.A. § 2000e(f).

■ The Sixth Circuit applies the common law test of agency, as opposed to the economic reality test, to determine whether a plaintiff is a defendant's employee or an independent contractor. *Id.* Critical factors which courts analyze include the right to control the means by which assignments are completed, the skills required of the plaintiff, the defendant's right to assign projects, control of the method of work, the power to hire and to determine how to compensate the plaintiff, and the tax treatment of the relationship. *Id.* (citing *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir.1996)).

■ Lemmings admits that she was not a direct employee of FedEx. The evidence is not sufficient to raise an inference

of an indirect employment relationship. FedEx and McCollum did not share their operations, equipment, work assignments, management, personnel control, accounting practices, or financial control. FedEx did not retain any influence over any of the terms or conditions of Lemmings' employment by McCollum. McCollum was neither an employee nor an agent of FedEx in establishing and implementing his employment practices. He was instead independently responsible for all employment-related decisions under the operation agreement. Lemmings served at the pleasure of McCollum, who was responsible for hiring, supervising, compensating, and firing her. Lemmings reported directly to McCollum and was his immediate subordinate. McCollum Delivery Service was treated by the IRS as an independent contractor for tax purposes.

## B. *Prima facie* case of hostile work environment

■ Even if Lemmings could present sufficient evidence to establish an indirect employment relationship with FedEx, she would fail to meet the elements of a *prima facie* case of sexual harassment. A plaintiff may establish a Title VII violation by proving that the sexual harassment created a hostile or abusive work environment. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir.2000). To establish a hostile work environment claim, an employee must show that: (1) she belongs to a protected class; (2) she was subjected to an unwelcome sexual harassment; (3) the harassment complained of was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)); *see also Bowman*, 220 F.3d at 462–63.

The first three *Randolph* factors appear undisputed. As a female, Lemmings is a member of a protected class. *See Valentine–Johnson v. Roche*, 386 F.3d 800, 814 (6th Cir.2004). She was subjected to unwelcome touching, allegedly accompanied by a lick and a lewd remark from a male coworker.

■■ To establish that the harassment complained of was based on her sex, the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). Harassing behavior need not be sexually explicit or sexual in nature; any harassing behavior motivated by sex-based discriminatory animus will satisfy the "based on sex" requirement. *Id.* Johnson allegedly licked Lemmings on her neck, while restraining her, and told her, with sexual connotations, to think of him. The alleged conduct was arguably sexual in nature because of the alleged statement and the physically invasive lick. Even if it were not overtly sexual in nature, based on the record, it appears that Lemmings would not have been subjected to the same treatment but for her sex because Johnson did not subject males to any inappropriate behavior and was later terminated for sexually harassing another female.

■ Discrimination creates a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Randolph*, 453 F.3d at 733 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The test must be met both from the plaintiff's subjective position and from the objective position of a reasonable person. *Id.*

■ The court must consider the totality of the circumstances in determining whether harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Id.* Specifically, the court must look at the "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Bowman*, 220 F.3d at 463 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367); *see also Valentine–Johnson*, 386 F.3d at 814.

The Sixth Circuit has frequently addressed the extent of harassment necessary to survive a motion for summary judgment. In *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir.2000), the court affirmed summary judgment for defendant employer where the plaintiff alleged three specific instances of offensive behavior by her supervisor during a period of five months, including the manager's placement of a cigarette pack inside her brassiere strap, his offering a cough drop to her while commenting "Since you lost your cherry, here's one to replace the one you lost," and his comment "Dick the malls, dick the malls, I almost got aroused" on seeing plaintiff's Christmas sweater that read "Deck the malls." *Id.* at 981.

In *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir.2000), the court upheld summary judgment for a defendant where a supervisor made several dirty jokes in the plaintiff's presence that were not aimed at her, made a sexual advance related to the plaintiff's evaluation, referred once to her as "hot lips," and made isolated comments about her state of dress.

The court reversed a grant of summary judgment to defendant employer, however, in *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 559 (6th Cir.1999), where the plaintiff had been subjected to constant obscene language, had been told to "back up" while she was bending over, had her supervisor put his arms around her neck while he was making an obscene comment, had been locked into the warehouse where she worked, and had been told "you can rub up against me anytime" by a colleague while he was staring at her breasts. The court found these incidents, collectively, not merely crude, offensive and humiliating, but also physically invasive. *Id.*

■ The harassment alleged here is both less frequent and less severe than the factual circumstances not only in *Williams*, but also in *Burnett* and *Morris*. Isolated incidents of harassment are generally not actionable unless they are egregious. *Bowie v. Advanced Ceramics Corp.*, 72 Fed.Appx. 258, 264 (6th Cir. 2003); *see also Randolph*, 453 F.3d at 733. Other circuits have occasionally found a hostile work environment based on a single incident, but only if it involved a significant physical violation, *see, e.g., Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128 (2d Cir.2001) (rape); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243–44 (10th Cir.2001) (choking, biting, undressing); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir.1998) (being pulled by the hair while a coworker grabbed plaintiff's breast and put his mouth on it), or was committed by a supervisor, *see, e.g., Quantock v. Shared Marketing Servs., Inc.*, 312 F.3d 899 (7th Cir.2002).

■ Lemmings' feelings of embarrassment and humiliation, without more, are not enough to constitute harassment, particularly because they were incited by a coworker not in a position of authority. Lemmings testified that, before the day of the incident that lead to this lawsuit, she considered Johnson friendly and not disrespectful. Johnson and Lemmings worked together only rarely, for short periods of time. Johnson's behavior was inappropri-

ate and offensive, but it did not involve a significant physical violation, it was not prolonged or repeated, and it was not perpetrated by someone in a position of authority or with whom Lemmings had to interact frequently. Johnson's behavior was not sufficiently severe to create a hostile work environment from the objective position of a reasonable person. Although Lemmings appears to have been subjectively offended by the incident, she did not stop working, she did not complain to McCollum or to FedEx immediately after the incident, and she continued to work for McCollum and then as a contractor for FedEx.

 The fifth *Randolph* factor is employer liability. Different liability standards apply depending on whether the perpetrator is the plaintiff's supervisor or coworker. *Williams,* 187 F.3d at 560–61. When a hostile work environment claim is based on a coworker's, as opposed to supervisor's, actions, *Faragher* factors do not apply. *Id.* at 561. Even after a hostile work environment has been established, "for an employer to be liable for the sexual harassment of an employee by a coworker, the harassed employee must show that the employer both (1) knew or should have known of the harassment, and (2) failed to take prompt and appropriate corrective action." *McCombs v. Meijer, Inc.,* 395 F.3d 346, 353 (6th Cir.2005) (quoting *EEOC v. Harbert–Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir.2001)). When an employer has fashioned a response to allegations of harassment by the plaintiff's coworker, the employer will only be liable if its response "manifests indifference or unreasonableness" given the facts the employer knew or should have known. *McCombs,* 395 F.3d at 353 (citing *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir. 1997)).

Johnson exercised no authority over Lemmings. Indeed, Lemmings admits that he was not her supervisor. When Lemmings informed FedEx of the incident, management began to investigate her allegations the same day, interviewed employees, and subsequently warned and transferred Johnson. Lemmings testified that she found Johnson offensive again only once, when he glared at her. Lemmings' disagreement with FedEx's treatment of Johnson after the investigation of the incident does not make FedEx's response indifferent or unreasonable.

 Lemmings has not presented sufficient evidence to raise a genuine issue of material fact about the lack of an employment relationship between Lemmings and FedEx, about the lack of a hostile work environment, or about FedEx's liability.

## V. Conclusion

FedEx's motion for dismissal with prejudice and/or for judgment in its favor as a matter of law pursuant to Rules 41(b) and 56(e) of the Federal Rules of Civil Procedure is DENIED as MOOT.

Because Lemmings has elected not to pursue her claim of retaliation, the retaliation claim under Title VII and the THRA is DISMISSED.

Lemmings has failed to set forth specific facts establishing a *prima facie* case of sexual harassment. Reading the evidence as well as all inferences drawn from it in the light most favorable to Lemmings, there is no material factual dispute about the lack of an employment relationship between Lemmings and FedEx, about the lack of a hostile work environment, or about FedEx's liability. Therefore, FedEx's motion for summary judgment on the sexual harassment claim under Title VII and the THRA is GRANTED.